IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM HAY III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 25-1500 |
| v. | ) | |
| | ) | |
| FRANK BISIGNANO | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant, | ) | |

MEMORANDUM OPINION

**I.       INTRODUCTION**

Pending before the court is an appeal from the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claim of William Hay III

("plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act

("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3).   Plaintiff contends the Administrative Law Judge

(the "ALJ") a) failed to accept the two examination-based medical opinions; b) failed to consider

the consistency between the two examination-based medical opinions, that if found persuasive,

would have supported plaintiff's subjective complaints; and c) failed to properly consider

plaintiff's subjective complaints of pain from his fibromyalgia diagnosis and its impact on

plaintiff's limitations to his ability to do work.   Plaintiff asserts that the ALJ's decision is not

supported by substantial evidence and should be reversed.   It is plaintiff's contention that the

decision of the ALJ should be vacated, and the case remanded to consider properly all the

evidence of record.   The Commissioner asserts that the ALJ's decision is supported by

substantial evidence and the Commissioner's decision should be affirmed.

Plaintiff filed a motion for summary judgment (ECF No. 7) which was denied as moot because the Federal Rules of Civil Procedure Supplemental Rules for Social Security do not contemplate that kind of motion.[1]  Plaintiff filed a brief (ECF No. 8) which is the appropriate means to seek relief. Fed. R. Civ. P. SUPP SS 6.   The Commissioner filed a brief in opposition to plaintiff's motion for summary judgment asserting that the ALJ's decision should be affirmed. (ECF No. 9.)   For the reasons set forth below the court will affirm the decision of the Commissioner.

## II.    PROCEDURAL HISTORY

On December 19, 2023, plaintiff protectively filed a Title II application for DIB beginning July 1, 2020, which is at issue before the court. (R. at 17.)   The claim was initially denied on March 26, 2024, and again upon reconsideration on July 5, 2024. (Id.)   On July 22, 2024, plaintiff requested a hearing, which was conducted by telephone before the ALJ on March 11, 2025. (Id.)   Plaintiff agreed to appear by telephone and testified at the hearing. (Id.) Plaintiff was represented by an attorney at the hearing. (Id.)   An impartial vocational expert ("VE") also testified at the hearing. (Id.)

In a decision dated May 2, 2025, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under §§ 216(i) and 223(d) and was able to return to other

---

1. The committee notes accompanying the Federal Rules of Civil Procedure Supplemental Rules for Social Security explain: "Rule 5 states the procedure for presenting for decision on the merits a § 405(g) review action that is governed by the Supplemental Rules. Like an appeal, the briefs present the action for decision on the merits. **This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record**. Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Fed. R. Civ. P. SUPP SS 6 (emphasis added).

relevant work. (R. at 30.)   Plaintiff timely requested a review of that determination on May 16, 2025, (R. at 289), and by letter dated July 29, 2025, the Appeals Council denied the request for review and the decision of the ALJ became the final decision of the Commissioner. (R. at 1-5.) Plaintiff subsequently commenced the present action seeking judicial review.

### III.    PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE

#### A.    Plaintiff

Plaintiff was born on August 3, 1990, and was 29 years old, a "younger individual," at the time his application for benefits was filed and was 34 years old at the time of the hearing before the ALJ. (R. at 29.)   He completed the eleventh grade, obtained a GED, and had some college education. (R. at 42-44, 228.)   Plaintiff is unmarried, lives with a roommate, has pets and is able to drive a car. R. at 40, 47-48.)

Plaintiff worked as a map producer for Uber Technology Group until he was laid off during the pandemic, but alleges he has been unable to work since he became disabled on or about July 1, 2020. (R. at 40-42.)   Since that time, plaintiff testified that because of the pain he experiences from fibromyalgia and the lack of motivation and anxiety brought on from depression and bipolar disorder, he has had to give up or reduce many pleasant activities and is unable to work. (R. at 46, 51-56.)   He, despite having short-term jobs driving for Lyft and working at GameStop, was unable to keep working for more than a few months. (R. at 41-42.)

During the hearing the ALJ heard testimony from plaintiff regarding his limitations, predominantly focusing on his pain and physical limitations. (R. at 42, 45-58.)   Plaintiff reported taking college classes, playing video games or cards, and some capability for cooking, cleaning and grocery shopping. (R. at 48-50.)   Plaintiff's medication list includes: albuterol

sulfate, asmenic, certaizine, diclofacan, duloxetine, fluticasone, magnesium oxide, trazodone, and vitamin B12. (R. at 230.)

### B.    Medical Record

### 1.    Doctor Ellen Veschio

Plaintiff receives most of his care through the Veterans Affairs Medical Clinic ("VAMC") system. (R. at 291-430, 451-738, 774-869.)   He has regularly been seen by Dr. Ellen Veschio ("Dr. Veschio") as his primary care provider. (Id.)   Dr. Veschio completed a medical source statement on March 10, 2025. (R. at 861-868.)   She noted on the questionnaire that she had treated plaintiff "every 6 months" and listed his primary diagnoses as degenerative disc disease, fibromyalgia, asthma and bipolar disorder. (R. at 861.)   Describing plaintiff's symptoms, she wrote that plaintiff had "chronic back joint pain - stable [but was] still able to participate in activities of daily living [and] school requirements." (Id.)   She indicated that he was able to tolerate moderate work stress "from a physical standpoint," and opined that he could walk for "1-3" city blocks, and noted, "he can sit for my exams." (R. at 862.)

Despite having a long-term medical relationship with plaintiff, Dr. Veschio declined to answer or wrote "don't know" for several questions on the form, including any questions relating to plaintiff's emotional or psychological limitations, and referred the reader to "see behavioral health assessments." (R. at 862-868.)   She noted that plaintiff never had a "functional capacity exam" at the VAMC and declined to offer any insight into the length of time that plaintiff could sit, stand, or walk in an 8-hour workday. (R. at 863.) Dr. Veschio did, however, indicate that plaintiff would require "a job that permits shifting positions at will from sitting, standing or walking," and he would require unscheduled breaks "every 2-3 hours" for 15-20 min approx." (Id.)   She indicated that, on average plaintiff would likely be absent from work due to his

impairments "more than four days per month." (R. at 864.)   She reported that plaintiff's impairments "are likely to produce 'good days' and 'bad days.'" (R. at 864.)

### 2.   Doctor Richard Gibbs

On March 14, 2024, plaintiff was seen and evaluated by Richard Gibbs, M.D. ("Dr. Gibbs") for a consultative medicine examination for the Benefit Disability Determination ("BDD") office's use "in making a determination of disability." (R. at 433.)   In his one-time evaluation, he noted, among other things, plaintiff's history of fibromyalgia, anxiety, panic attacks, insomnia, back pain and bipolar disorder. (Id.)   He repeated a list of activities of daily living that plaintiff, on a pre-appointment questionnaire, reported being able to do, including: "do laundry, dress himself, … cook, prepare meals, and shower or bathe himself daily." (R. at 435, 450.)

After a physical examination, Dr. Gibbs found plaintiff to be "in no acute distress," with normal gait, "strength 5/5 in the upper and lower extremities," and 5/5 grip strength. (R. at 435-437.)   He indicated that plaintiff could lift or carry up to 10 ponds frequently, and occasionally up to 20 pounds. (R. at 439.)   The prognosis given for plaintiff by Dr. Gibbs was "fair," without further comment. (R. at 437.)   The report opined that plaintiff could sit for 5 hours in an 8-hour workday, stand for 3, or walk for 2 hours. (R. at 440.)   He found plaintiff able to frequently lift, reach, handle, finger, feel, push or pull with either hand, and occasionally climb stairs or ramps, ladders or scaffolds, but he could frequently perform other positional actions. (R. at 442.)   His report did not list any environmental factors that plaintiff could not tolerate. (R. at 443.)

### 3.   State Agency Medical Consultants

Plaintiff's medical record file was reviewed by state agency medical consultants for independent disability determination analysis and residual functional capability ("RFC") to work. (R. at 64-83.)   Mental health professional Melissa Lynn Franks, Psy.D., on February 22, 2024, provided a psychiatric review and Anjana Vrajlal Popat, M.D., on March 26, 2024, noted findings about plaintiff's medical conditions. (R. at 65-73.)   On reconsideration, Virginia Carolyn Martin, Psy.D., on June 24, 2024, assessed plaintiff's mental health record, and Dilip S. Kar Dato, M.D., reviewed other medical conditions on July 5, 2024. (R. at 74-83.)

Mental health reviewers of the file each determined that plaintiff was impacted due to his bipolar disorder, finding he had mild limitations in the paragraph "B" criteria of the listings in a) the ability to understand, remember or apply information; b) interact with others; and c) adapt or manage oneself; they found moderate limitation in the area of concentrate, persist, or maintain pace. (R. at 67, 77.)   In the initial disability determination, the mental residual functional capacity explanation stated:

> Based on subjective and objective findings: The claimant can understand, retain, and apply information despite the limitations resulting from his impairment. He can concentrate and persist and maintain pace in order to complete the task. He can adapt and manage himself. The claimant has the mental capacity to manage, understand, and complete simple one or two step tasks.

(R. at 71.)   Upon reconsideration, the reviewer found more sub-areas of sustained concentration and persistence moderately limited than upon initial review, but still found "[t]he claimant is able to meet basic mental demands on a sustained basis despite the limitations resulting from impairments." (R. at 81.)

The medical reviewers noted the activities of daily living that plaintiff was capable of continuing, and his appearance and performance in medical testing, and due to plaintiff's age,

education, and RFC, each recommended a finding of "not disabled" because plaintiff can adjust to other work. (R. at 71, 82.)   Both reviewers recommended plaintiff was capable of "medium" exertional work with exertional limitations limited to occasionally lifting or carrying 50 pounds and frequently 25 pounds, with standing, walking, or sitting for about 6 hours of an 8-hour workday. (R. at 69, 72, 79, 82.)   The reconsideration reviewer, Dr. Kar, however, noted additional postural and environmental limitations for plaintiff's RFC beyond those noted at the initial review: climbing ropes, ladders or scaffolds was limited to occasionally and extreme cold, humidity, noise, vibration and hazards were to be avoided. (R. at 79.)

## IV.    LEGAL STANDARD OF REVIEW

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g).   The judicial review of a final decision is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).   With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner.   "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).   The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d Cir. 2002).   This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).   The Third

Circuit Court of Appeals had held that an administrative law judge has a legitimate basis to discredit a medical opinion when there are inconsistencies and contradictory evidence in the record. See Hubert v. Comm'r of Soc. Sec., 746 F. App'x 151, 153 (3d Cir. 2018).

V.      **DISCUSSION**

A.      **Administrative Law Judge's Findings**

Disability is defined under Title XVI of the SSA as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when his physical or mental impairment or impairments are of such severity that he is not only unable to do "his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

Proceeding through the sequential evaluation process, the ALJ determined at step one that plaintiff had not engaged in substantial activity since his claimed disability date, (R. at 20); at step two acknowledged plaintiff had severe impairments of fibromyalgia; bipolar disorder; anxiety disorder with panic attacks; insomnia; obesity; and osteoarthritis, (id.); and found that plaintiff's combination of impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 at step three. (R. at 21.)   Plaintiff exhibited multiple moderate limitations, but none that rose to the level of serious or extreme as required to satisfy the "paragraph B" criteria, and the record of his conditions did not satisfy the "paragraph C" criteria. (R. at 22.)

8

Prior to commencing step four, the ALJ determined plaintiff's RFC.   The ALJ considered plaintiff's entire medical record, to include the medical opinions and state administrative medical reviewers' reports discussed above, and determined plaintiff's RFC as follows:

> [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except this individual could lift up to 50 pounds occasionally and 25 pounds frequently. This individual will be able to stand and walk for a total of six hours and an eight-hour workday and sit for about six hours and an eight-hour workday with normal breaks. This individual could occasionally climb ladders, ropes, and scaffolds. All other posteriors would be frequent. This individual would need to avoid concentrated exposure to extreme cold, humidity, vibrations and hazards such as hazardous machinery. This individual is able to understand, remember and carry out simple verbal, written and demonstrated instructions. However, work related decision making would be limited to occasional. The work would be in a stable work environment where the workplace and work process would remain generally the same from day-to-day.

(R. at 23.)

At step four, for purposes of assessing prior work, the ALJ utilized the plaintiff's prior work as a mapper. (R. at 29.)   During the hearing, the ALJ heard testimony from plaintiff and acknowledged that prior work performed by the plaintiff at the sedentary, skilled level would no longer be available given his mental limitations. (R. at 60.)

With respect to the findings at step five, the ALJ posited a series of hypothetical questions to the VE to determine whether there was other work an individual with an RFC like plaintiff was capable of performing given the physical and mental limitations noted in the RFC findings. (R. at 59-61.)   Utilizing plaintiff's data as a younger individual, with at least a high school degree, vocational history, and based on his earlier testimony at the hearing, the VE opined plaintiff's prior work was skilled, which would no longer be available based on the limitation that the hypothetical individual could understand, remember, and carry out simple

verbal, written, and demonstrated instructions, work-related decision making would be limited to occasional, and that the work be in a stable environment that did not change much day-to-day. (R. at 60.)   The VE testified that there were still a significant number of jobs available in the national economy at the medium level, that the hypothetical individual would be capable of performing. (Id.)   The VE testified that if the hypothetical individual would miss ten percent of the workweek, or more than one absence per month, there would be no jobs available for that individual. (R. at 62.)   The ALJ concluded at step five that there were "jobs that exist in significant numbers in the national economy that [plaintiff] can perform…." (R. at 29.)   The ALJ concluded that plaintiff was not disabled. (R. at 30.)

**B.      Alleged Errors**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Plaintiff's appeal of denial of SSI benefits focuses solely on the "uniqueness" of his fibromyalgia diagnosis.[2]   Specifically, he argues that the ALJ improperly rejected the opinions of Dr. Veschio and Dr. Gibbs, the former of which was plaintiff's longtime treating health provider. (Pl.'s Br., ECF. No. 8 at 10.)   He alleges that the ALJ's failure to evaluate the consistency of these opinions with one another, both opinions based on physical examination, was error. (Id.) Finally, plaintiff asserts that a medical diagnosis of fibromyalgia should have bolstered the plaintiff's credibility with respect to his subjective complaints of pain and the ALJ's discounting of his complaints had no basis in fact. (Id. at 12.)

---

2. Plaintiff's appeal does not contest the opinion of the ALJ relative to any previously claimed mental health limitation.   Under the circumstances, plaintiff's noted severe mental health related impairments, such as bipolar disorder and anxiety disorder with panic attacks, will not be focused on in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived.")

### 1.    Failure to Accept the Opinions of Dr. Veschio and Dr. Gibbs

Plaintiff challenges the ALJ's conclusion that the opinion of Dr. Veschio was not persuasive. (R. at 28.)   For claims filed after March 27, 2017, like the claim in this case, the policy about how to evaluate medical evidence was altered.[3]

> The new rules provide that adjudicators will evaluate all medical opinions and findings using the factors delineated in the new regulations; supportability and consistency are the most important factors and their application must be explained; other factors which "will be considered" and about which adjudicators "may but are not required to explain" are the medical source's: "treatment relationship" with the claimant including length, frequency, purpose and extent of the treating relationship and whether the source has an examining (as opposed to non-examining) relationship with the claimant; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the SSA disability program's policies and evidentiary requirements.

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 172 (2025 ed., Thomson Reuters, 2025) (quoting 20 C.F.R §§ 404.1520c(b), (c); 416.920c(b), (c), (2017)).   In applying the altered policy, a district court commented:

> [I]n March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis…. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." **The two "most**

---

3.   The prior policy gave treating physicians' opinions controlling weight (the "treating physician rule") where their positions were supported by medical evidence and were not otherwise inconsistent with other substantial evidence in the record. See Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

**important factors for determining the persuasiveness of medical opinions are consistency and supportability**," [and a]n ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.

Densberger v. Saul, No. 1:20-CV-772, 2021 WL 1172982 at *7-8 (M.D. Pa. Mar. 29, 2021) (quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)) (emphasis added).

The ALJ considered and addressed the supportability and consistency of Dr. Veschio's opinion.   She explained why the opinion of Dr. Veschio was considered, but she "did not find this opinion to be persuasive." (R. at 28.)   Despite being a long-time provider for plaintiff, the ALJ did not find that the opinion she offered considered plaintiff's entire medical history.   The ALJ noted that Dr. Veschio's treatment notes demonstrate plaintiff "routinely presented normal gait and stance … often presented a normal full range of motion … has anxiety under reasonable control …demonstrated good self-care … [and] was able to sleep well at night." (Id., R. at 703.) There was no further explanation in Dr. Veschio's medical source statement to explain or support why she would have indicated that plaintiff would require unscheduled breaks or be expected to require excessive absences. (Id.)   The ALJ found that Dr. Veschio provided subjective statements which were at odds with the totality of the treatment record and other findings listed by other providers and were not consistent with plaintiff's testimony at the hearing where he reported the ability to conduct other daily living activities, indicative of the ability to work.

Dr. Gibbs evaluated plaintiff in a one-time consultive medical examination. He noted additional limitations, but the ALJ determined that his opinion was not fully consistent with his findings of plaintiff's appearance in examination and reported activities of daily living, and plaintiff's record. (R. at 27.)   The ALJ noted: "Dr. Gibbs opined that the claimant is able to

perform a range of work similar to the light exertional level with reduced ability to sit stand and walk. The consultant also included postural limitation use off feet." (Id.)   Nowhere else in plaintiff's record were there indications that plaintiff would require "operation of foot controls" to be limited to "frequently" as found by Dr. Gibbs. (R. at 441.)

The ALJ concluded the record supported the ALJ's RFC determination. (Id.)   The ALJ determined the assessments from the reviewing medical professionals were more appropriate findings for plaintiff's abilities because they reviewed longitudinal evidence of plaintiff's medical record. (Id.)   As noted, this court needs to consider whether the ALJ's decision is supported by substantial evidence.   Here, the ALJ fully evaluated Dr. Veschio's and Dr. Gibbs' opinions, found those opinions were not supported or consistent and explained why the other medical professional opinions were more persuasive.   There is substantial evidence to support the weight given by the ALJ to Dr. Veschio's and Dr. Gibbs' opinions and she sufficiently explained the reasons for her conclusion.

### 2.      Failure to Articulate the Consistency Between the Opinions of Dr. Veschio and Dr. Gibbs

Plaintiff argues the ALJ should have found "consistency between the two opinions" of Dr. Veschio and Dr. Gibbs. (Pl.'s Br., ECF. No. 8 at 10.)   This logic is flawed because the ALJ could determine what work-related functions were supported by the record as a whole. See 20 C.F.R. § 404.1520b.   The ALJ did not ignore any evidence submitted by plaintiff and, as discussed above, there is substantial evidence to support the ALJ's findings.

As discussed above, ALJ did address the consistency and supportability of Dr. Veschio's opinion, and the additional limitations recommended in Dr. Gibbs' opinion, and there is substantial evidence to support the weight given by the ALJ to each of those opinions.

> A judge may consider many factors yet base a decision on just one or two. And those one or two are the "reasons upon which [the denial of benefits] is based." 42 U.S.C. § 405(b)(1). The statute requires administrative judges to explain only the dispositive reasons for their decisions, not everything else that they considered.
>
> …
>
> Administrative judges must always discuss the two most important factors: supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). But if opposing medical opinions are equally well-supported and consistent, then supportability and consistency are not dispositive. … So under the regulation, administrative judges must always explain the reasons for their decisions. But that does not mean always explaining all the factors.

Zaborowski v. Comm'r of Soc. Sec., 115 F.4th 637, 639 (3d Cir. 2024).   Even if there is some consistency between the two opinions, the ALJ explained why the opinions plaintiff relies upon were not supported or were inconsistent with evidence in the record and her decision to find those opinions not persuasive. (R. at 27-28.)

The ALJ found persuasive some portions of each of the state agency consultants' opinions and determined what work-related functions were supported by the record as a whole. See Zappala v. Barnhart, 192 F. App'x 174, 177 (3d Cir. 2006) ("[T]he possibility that two inconsistent conclusions may be drawn from the evidence contained in the administrative record does not prevent an agency's finding from being supported by substantial evidence.").   The ALJ noted at the initial level review that the state agency medical consultant determined plaintiff was able to work at the medium exertional level with no postural or environmental limitations. (R. at 69, 72.)   The ALJ independently determined that plaintiff's record "supports somewhat greater limitations." (R. at 27.)   The ALJ did not just rubber-stamp any medical source opinion.   She found greater limitations than what was recommended at the initial level, and she found lesser limitations than some of the severe limitations noted by Dr. Veschio and Dr. Gibbs.

The RFC that the ALJ determined for plaintiff ultimately included the lifting and standing/siting limitation recommended by the state medical examiners, with the postural and environmental limitations recommended at the reconsideration review, with the exception of the environmental limitation for noise, which the ALJ rejected. (See R. at 23, 27, 69, 79.)   The ALJ, in determining plaintiff's RFC, explained the work-related limitations she found after review of the record, specifically plaintiff's fibromyalgia, and presented hypotheticals to the VE based on those findings.   The VE's identification of jobs a hypothetical person with an RFC like plaintiff would be able to perform that exist in significant numbers in the national economy took those limitations into consideration.

A case similar to the instant case is Mercado v. Kijakazi, 629 F. Supp. 3d 260 (M.D. Pa. 2022).   In Mercado, the plaintiff, like here, argued that the administrative law judge erred in not finding certain opinions of medical treatment providers persuasive.

> In explaining why he found [the state medical examiner's] opinion persuasive, the ALJ first noted that … it was consistent with [plaintiff's] medical record showing claimant's history of fibromyalgia with diffuse widespread pain but with normal strength, no sensory deficits, and negative laboratory work-up and [plaintiff's] subsequent treatment notes of record showing overall stability.

Mercado, 629 F. Supp. 3d at 284.   The administrative law judge in Mercado, like the ALJ here, explained why he found other providers' opinions unpersuasive.   The court concluded: "The ALJ clearly evaluated all medical opinions for their persuasiveness and 'explain[ed] how [he or she] considered the supportability and consistency factors' in making his determination." Id. (quoting Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942, 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020)).

15

The ALJ sufficiently explained the reasons, based on the totality of plaintiff's record, for her conclusions in the development of plaintiff's RFC.   While plaintiff, or this court, may view the situation differently, there is substantial evidence to support the weight given to the opinions of Dr. Veschio and Dr. Gibbs, even if they are somewhat consistent, and the RFC developed by the ALJ.

### 3.      Failure to Accept Plaintiff's Subjective Complaints of Pain from Fibromyalgia

Plaintiff contends that his subjective complaints of pain should not have been discredited and that the diagnosis he has of fibromyalgia in his medial record should have provided him with more credibility. (Pl.'s Br., ECF. No. 8 at 11.)   The SSA policy for evaluation of fibromyalgia acknowledges that it is "a complex medical condition" that, before awarding disability benefits, must be supported by "sufficient objective evidence." Soc. Sec. Ruling, SSR 12-2p; Titles II & XVI: Evaluation of Fibromyalgia, SSR 12-2P (S.S.A.), 2012 WL 3104869, at *2.   A medically determinable impairment ("MDI") of fibromyalgia ("FM") occurs when a "physician diagnosed FM and provides the evidence [SSA] describe in section II.A. or section II.B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record." (Id.)   Plaintiff's non-medical sources, his self-reported limitations at his consultive medical examination, (R. at 450), and his testimony at the hearing "help [SSA] evaluate the severity and functional effects of a person's FM. … It may also help us when we make findings about the credibility of the person's allegations about symptoms and their effects." (Id. at *4.)

The ALJ found plaintiff's fibromyalgia to be severe. The issue was whether plaintiff's claims about the intensity, persistence and limiting effects of the pain were "not entirely

consistent with the medical evidence and other evidence in the record." (R. at 24.)   According to

the Third Circuit Court of Appeals:

> Allegations of pain and other subjective symptoms must be supported by objective medical evidence. See 20 C.F.R. § 404.1529. Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. See 20 C.F.R. § 404.1529(c).

Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).   In Greenwood v. Colvin, No.

15-93, 2016 WL 74648 (W.D. Pa. Jan. 7, 2016), the court noted:

> "I emphasize that fibromyalgia patients are not per se entitled to disability benefits; moreover, of course, constant complaints to medical providers do not equate to trustworthiness." Young v. Colvin, 2015 U.S. Dist. LEXIS 162451, at *8, 2015 WL 7871060 (W.D. Pa. Dec. 3, 2015). Instead, a claimant must demonstrate that she has "such a severe case of fibromyalgia as to be totally disabled from working." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996). In other words, not every fibromyalgia patient will obtain a favorable result on appeal to a district court. At the same time, however, "it is incumbent upon adjudicators to be as clear and specific as possible when explaining their judgments of the believability of those diagnosed with this poorly understood disorder, which has significant subjective components." Young, 2015 U.S. Dist. LEXIS 162451 at *9.

Id. at *3.

The ALJ considered the totality of plaintiff's treatment notes and found that they

"generally do not support the claimant's allegations of chronic pain, as they indicate largely mild

fibromyalgia symptoms." (R. at 28.)   Here, the ALJ found that plaintiff's fibromyalgia was

severe, and plaintiff's

> alleged symptoms and limitations have some support in the evidence discussed above showing long-term pain complaints, positive findings of increased body habitus, pursuit of medication treatment, and positive examination findings of tenderness and fatigue.

> However, the claimant's allegations are not fully consistent with the overall record, which shows conservative treatment, a largely unremarkable consultative examination, and routinely intact examination findings. The claimant's physical examinations were largely unremarkable. … he generally presented a functional range of motion … On February 1, 2024, he reported to his counselor that he felt that his medication for fibromyalgia "is helping with pain/discomfort" …
>
> Despite the claimant's complaints of pain, none of his treating sources have reported observing any of the signs frequently present in the individual who suffers from severe and disabling pain. … Again, this is not to say the claimant is symptom free, but the evidence does not support a conclusion that his pain is so severe that it precludes all work.

(R. at 24-25.)   The ALJ did consider plaintiff's reported symptoms, and his fibromyalgia diagnosis as a whole, and determined that plaintiff's RFC was appropriate with the exertional, postural, and environmental limitations that she established, in light of all plaintiff's medical conditions.   There is substantial evidence to support the ALJ's findings.

## VI.   CONCLUSION

The ALJ explained why the opinions of Dr. Veschio's and Dr. Gibbs were not persuasive and determined that plaintiff had the capacity to conduct limited work activity with the additional limitations set forth in the RFC, despite the severe disabilities identified in step two, and more robustly discussed with insight to plaintiff's fibromyalgia in the body of the ALJ's decision. The ALJ sufficiently explained the limitations she considered in forming plaintiff's RFC, taking into account plaintiff's medical record as a whole, including the medical source opinions about plaintiff's medical impairments.

Having considered the parties' motions, the record as a whole and the applicable law, the court finds there is substantial evidence in the record to affirm the ALJ's decision.   The court will affirm the decision of the Commissioner.

An appropriate order and judgment will be entered.

Dated: April 2, 2026

BY THE COURT:


    s/Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge